UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> *Plaintiff*, <br><br> v. <br><br> STATE OF MAINE, <br><br> *Defendant.* | Case No. 1:24-cv-00315-SDN |

### NOTICE BY DISABILITY RIGHTS MAINE, AMERICAN CIVIL LIBERTIES UNION OF MAINE, GLAD LAW, AND CENTER FOR PUBLIC REPRESENTATION OF INTENT TO PARTICIPATE

Disability Rights Maine ("DRM"), American Civil Liberties Union ("ACLU") of Maine, the GLAD Law ("GLAD"), and the Center for Public Representation ("CPR") (together, "the Coalition") file this Statement to notify the Court of their interest in the Court-approved Settlement Agreement in this matter, and their desire to be heard regarding any proposed modification of the Agreement by the United States or the State of Maine, including the elimination of critical components of that Agreement related to the Independent Reviewer. *See* ECF No. 20-1.

Coalition members have decades of experience enforcing federal disability law and advocating for marginalized groups, including children with behavioral health disabilities. Collectively, they have extensive knowledge of behavioral health system design, including the specific remedial services identified in the Agreement.

The Coalition has a deep and longstanding commitment to children with disabilities in Maine, including those who stand to benefit from the remedial actions set out under this Settlement Agreement. Coalition members have experience advocating for the receipt of medically necessary behavioral health services and are familiar with the systemic barriers faced by children and families. The Coalition has seen first-hand how the absence of intensive

home and community-based services is harming children in the focus population, leading to a worsening of their behavioral health conditions, repeated crisis events, involvement in juvenile justice systems, and avoidable and prolonged segregation from their families and communities.

The Coalition also has experience overseeing the implementation of large-scale systemic reform initiatives like the one contemplated here, including the challenges associated with similar system transformation efforts. *See* Addendum A (detailing each organization's experience). Coalition members have witnessed the important role independent reviewers and court monitors play in ensuring that: (1) Courts have necessary information about the status of compliance in matters where they retain jurisdiction; (2) parties have access to technical assistance and dispute resolution procedures; and (3) children and families receive and benefit from implementation of Court-ordered remedies.

DRM's careful monitoring of Maine's behavioral health care system resulted in the 2019 complaint alleging violations of the Americans with Disabilities Act (ADA), which sparked the United States's investigation, finding of violations, and ultimately this lawsuit. *See* ECF No. 20-1 at 1. The ADA bars public entities from denying services, programs, and other activities on the basis of disability. 42 U.S.C. § 12132. The Supreme Court has interpreted this provision to preclude "unjustified institutional isolation of persons with disabilities." *Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 600 (1999). In the Coalition's judgment, faithful implementation of the Settlement Agreement as written would remedy the major issues that DRM identified in 2019 and would dramatically improve the lives of Maine's children. Conversely, significant substantive changes to the Agreement could jeopardize, if not undermine, the purpose of the Agreement.

The United States and Maine entered the Settlement Agreement to resolve the shortcomings in Maine's behavioral health system and to comply with its obligations under the ADA; modifications to the Agreement may not serve the public interest. The Coalition therefore respectfully requests notice of, and an opportunity to address, any proposed

modifications to the Settlement Agreement or, if necessary, to move for intervention or litigating amici/amici curiae plus status before alterations to the Settlement Agreement are approved.

The Agreement calls for the appointment of an Independent Reviewer: an expert who is charged with evaluating and approving the State's implementation plan, determining the methodology for measuring compliance with that plan, and assessing and reporting on progress towards identified remedial benchmarks, including the State's efforts to deliver integrated, timely, and quality behavioral health services to children. *See* ECF No. 20-1 at 25-28. The Independent Reviewer also is empowered to assess individual service plans, interview stakeholders, and offer targeted technical assistance to proactively address implementation issues as they arise. *See id.* Finally, the Independent Reviewer's role and access to information provides critical information the Court and the public need to ensure that the State is meeting its obligations under the Agreement.

The Coalition recently learned that the United States and the State intend to seek modification of the Settlement Agreement, including potentially eliminating the Independent Reviewer position. On April 11, 2025, following a Request for Proposals process ("RFP"), the State awarded a conditional contract to Inspired Consulting Group, LLC to provide Independent Reviewer services, only to withdraw it the next month due to the United States's notification that it would withhold approval of the conditional contract award. The Coalition has confirmed in conversations with the State that the United States has proposed amending the Agreement, though the exact nature, scope, and impact of those contemplated amendments remain unknown.

The children of Maine are entitled to receive intensive home and community-based services in integrated settings as required by the ADA and *Olmstead*. Eliminating the Independent Reviewer's role will have significant, negative consequences–it would hamper the Court's ability to determine the status of compliance, make it harder for the parties to identify and resolve systemic barriers to implementation, and remove a critical mechanism

for ensuring children and families receive the benefits of the Agreement.

      Due to the damage that modifications to the Settlement Agreement could inflict, the Coalition respectfully requests an opportunity to address any proposed changes or, if necessary, to move for intervention or litigating amici/amici curiae plus status before the Court approves any modifications.

Dated:  July 28, 2025

Respectfully submitted,

*/s/ Corin R. Swift*
Corin R. Swift (M.E. Bar No. 009805)
Sidley Austin LLP
787 Seventh Avenue
New York, NY 10019
(212) 839-5381
corin.swift@sidley.com

Christopher A. Eiswerth*
Lakeisha F. Mays*
Sidley Austin LLP
1501 K St NW
Washington, DC 20005
(202) 736-8000
ceiswerth@sidley.com
lakeisha.mays@sidley.com

*Counsel for Disability Rights Maine*

**pro hac forthcoming*

*/s/ Carol J. Garvan*
Carol J. Garvan
American Civil Liberties Union of Maine Foundation
PO Box 7860
207-619-8687
Portland, ME 04112
*cgarvan@aclumaine.org*

*/s/ Anahita D. Sotoohi*
Anahita D. Sotoohi
American Civil Liberties Union of Maine Foundation
PO Box 7860

Portland, ME 04112
(207) 613-4350
*asotoohi@aclumaine.org*

/s/ Zachary L. Heiden
Zachary L. Heiden
American Civil Liberties Union of Maine Foundation
P.O. Box 7860
Portland, ME 04112
207-619-6224
zheiden@aclumaine.org

*Counsel for American Civil Liberties Union of Maine*


/s/ Mary L. Bonauto
Mary L. Bonauto
Hannah Hussey
GLAD Law
257 Deering Ave.
Portland, ME 04103
(617) 426-1350
mbonauto@gladlaw.org
hhussey@gladlaw.org

*Counsel for GLAD Law*

/s/ Kathryn Rucker
Kathryn Rucker
Steven Schwartz
Center for Public Representation
5 Ferry Street, Suite 314
Easthampton, MA 01027
krucker@cpr-ma.org
sschwartz@cpr-ma.org

*Counsel for Center for Public Representation*

## Addendum A

### Disability Rights Maine

Disability Rights Maine (DRM) is the agency designated to protect and advocate for the rights of individuals with disabilities in Maine, pursuant to the Developmental Disabilities Assistance and Bill of Rights Act of 2000, 42 U.S.C. §§ 15001-15115, the Protection and Advocacy for Mentally Ill Individuals Act of 1986, 42 U.S.C. §§ 10801-10827, and the Protection and Advocacy of Individual Rights program, 29 U.S.C. § 794e. DRM's mission is to advance justice and equality by enforcing rights and expanding opportunities for people with disabilities in Maine. DRM provides no-cost advocacy and legal services to people with disabilities who have experienced a violation of their rights. DRM was counsel of record in prior cases challenging the adequacy of Maine's behavioral health system for children, *French v. Concannon*, 1:97-cv-0024-GC, and *Risinger v. Concannon*, 00-CV-116-B-C. And in September 2019, DRM filed the state-wide *Olmstead* Complaint that eventually led to this litigation and subsequent settlement.

### American Civil Liberties Union of Maine

The American Civil Liberties Union of Maine Foundation (the "ACLU of Maine") is a nonprofit, nonpartisan organization founded in 1968 to protect and advance the civil rights and civil liberties of all Mainers. The ACLU of Maine has repeatedly advocated in the courts for the rights of children with disabilities in Maine, including their right to receive services in their communities. *See, e.g., State v. P.S.* 2020 ME 9, 224 A.3d 593 (amici curiae brief of Disability Rights Maine, ACLU of Maine, and Maine Assoc. of Criminal Defense Lawyers urging vacatur of jail sentence imposed on child due to lack of in-community services); *In re Child of Barni A.*, 2024 ME 16, 314 A.3d 148 (amici curiae brief of Disability Rights Maine and ACLU of Maine asserting State's failure to provide skilled nursing care to child should not be imputed to mother); *State v. J.R.*, 2018 ME 117, 191 A.3d 1157 (amicus curiae brief of ACLU of Maine asserting that incarcerating children at Long Creek may violate ADA); *A.I. v. Maine*, 2020 ME 6, 223 A.3d 910 (amici curiae brief of Disability Rights Maine, ACLU of

Maine, Kids Legal, GLAD, and Juvenile Law Center asserting due process rights of child deemed incompetent to stand trial); *see generally Sadiya Ali v. Long Creek Youth Development Center et al.*, 2:18-cv-109-JAW (suit brought by ACLU of Maine on behalf of child with a disability incarcerated at Long Creek, alleging ADA violation).

### GLBTQ Legal Advocates & Defenders

GLBTQ Legal Advocates & Defenders (GLAD Law) is a nonprofit, nonpartisan organization founded in 1978 to achieve equal justice under law for LGBTQ and all other people through litigation, policy, and education. GLAD Law has advocated under the Americans With Disabilities Act for decades, including in *Bragdon v. Abbott* (US 1998), *Williams v. Kincaid* (4th Cir. 2022), and *Blatt v. Cabela's Retail, Inc.* (E.D. Pa. 2017). GLAD Law has advocated for the rights of children with disabilities in Maine, including directly with young people in the justice system and out of home youth. GLAD Law has also supported public policy changes to build and strengthen Maine's behavioral health infrastructure and providers, and to expand the capacity and options of schools and law enforcement to address the behavioral health underpinnings of challenging or harmful behaviors.

### The Center for Public Representation

The Center for Public Representation ("CPR") is a national advocacy organization dedicated to enforcing and expanding the rights of people with disabilities and others who are in segregated settings. CPR provides technical assistance and support to a network of federally-funded Protection and Advocacy ("P&A") programs in each of the United States and U.S. territories. CPR has assisted numerous P&A partners, like Disability Rights Maine (DRM), seeking to reform their state Medicaid-funded behavioral health service systems and worked extensively with subject matter experts in the design and delivery of intensive home and community-based services.

CPR has been at the forefront of developing intensive home and community-based service systems for children with mental health disabilities In 2001, CPR brought ground-breaking class-action litigation alleging that the Commonwealth of Massachusetts violated

federal Medicaid law by failing to provide medically necessary services to children with serious emotional disturbance. Following the Court's extensive liability decision, CPR negotiated a court-ordered Judgment to reform Massachusetts' mental health system, that included many of the same reforms set forth in the Settlement Agreement in this case. *Rosie D. v. Patrick,* 497 F. Supp. 2d 76 (D. Mass. 2007). CPR oversaw the design and implementation of a range of Medicaid-funded services including comprehensive assessments, intensive care coordination, in-home therapy, and mobile crisis teams. It closely monitored the impact of new services on children and families, provided regular updates to the Court about the status of implementation, and collaborated with the State to adjust the remedy as needed. This home-based service system treats tens of thousands of Medicaid-eligible children and youth each year and has been recognized by the Centers for Medicare and Medicaid Services (CMS) and the Substance Abuse and Mental Health Services Administration (SAMHSA) as a national model for the provision of mandatory benefits under the Medicaid Act. As a result of the State's efforts and CPR involvement, the Court eventually determined the Commonwealth was in compliance with its orders and dismissed the case.