# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| **UNITED STATES OF AMERICA,**<br><br>   Plaintiff,<br><br>   v.<br><br>**STATE OF MAINE,**<br><br>   Defendant. | Case No. 1:24-cv-00315-SDN |

## UNITED STATES' RESPONSE AND MEMORANDUM OF LAW IN OPPOSITION TO NOTICE OF INTENT TO PARTICIPATE BY DISABILITY RIGHTS MAINE, *ET AL.*

The United States opposes the Notice of Intent to Participate, ECF No. 24—submitted after judgment in this matter—because the filers are not parties, cannot meet the standard for intervention, and are not entitled to otherwise participate. On December 20, 2024, the Court conditionally dismissed this action after approving and entering the Settlement Agreement resolving it. ECF Nos. 20, 20-1, and 21. Now, Disability Rights Maine, the American Civil Liberties Union of Maine, the GLAD Law, and the Center for Public Representation (collectively, the "Coalition"), filed their Notice asking for an opportunity to move in the future to participate in this closed case. The Notice cites unrealized concerns about how the United States may monitor Maine's compliance with the Agreement. This Court should deny the Coalition's Notice because: (1) it is an improper filing by a non-party that seeks a court order and relief without complying with the applicable Federal Rules of Civil Procedure; (2) it fails to demonstrate a basis for intervention; and (3) it fails to demonstrate any other basis for participation.

1

The United States acknowledges and appreciates the commitment of local stakeholders to Maine children with behavioral health disabilities. Indeed, the Agreement includes a role for stakeholders to provide feedback to the State on the State's compliance efforts. But the Coalition's Notice impermissibly asks for participation without proper justification.

In its Notice[1] to Participate the Coalition makes three requests: (1) "notice of, and an opportunity to address, any proposed modifications to the Settlement Agreement," ECF No. 24 at 2–3; or, in the alternative, (2) leave to move for intervention; or (3) leave to move for "amici curae plus" status, *id*. at 3. But the Coalition is not a party and has not provided sufficient grounds to justify a filing by a non-party. The Coalition fails to demonstrate that its members are entitled to intervention or amici curae plus status. The United States therefore respectfully requests that this Court deny the Coalition's request to participate.

I.  **The Coalition's Filing Is an Improper Filing by a Non-Party**

The Coalition's filing is improper and does not comply with the Federal Rules of Civil Procedure. To start, the Coalition styles its filing as a "notice" even though the Coalition makes multiple requests for a court order. Requests for a court order "must be made by motion" under Rule 7. Fed. R. Civ. P. 7(b). The Coalition also requests relief—including an opportunity to address any contemplated changes to the Agreement—that should be granted only to parties that formally intervene under Rule 24 and meet that Rule's standard for intervention. As explained below, the Coalition has not met, and cannot meet, the intervention standard.

Additionally, the Coalition is not a party. "[T]here is little precedent which deals with the issue of when a non-party may properly file some document with the Court . . . ." *DRFP, LLC v. Venezuela*, No. 2:04-cv-793, 2012 WL 995288, at *2 (S.D. Ohio Mar. 22, 2012). A court may look

---

[1] The Coalition styled its filing as a "Notice of Intent to Participate." ECF No. 24. The Court styled the Notice as a motion by subsequent order. ECF No. 25.

to whether the non-party can show "why its filing is proper or serves some proper purpose that cannot legitimately be accomplished apart from the unusual step of filing a document in a case to which it is not a party." *DRFP*, 2012 WL 995288, at *2; *see also Commodity Futures Trading Comm'n v. Oasis Int'l Group, Ltd.*, 2022 WL 1136571, at *2 (M.D. Fla. Apr. 18, 2022) (citing *DRFP* and saying that the non-party must make a showing of necessity). Courts, including one in this Circuit, have responded to non-party, unauthorized filings by striking them. *See*, *e.g*, *In re San Juan Dupont Plaza Hotel Fire Litig.*, No. MDL 721, 1989 WL 168401 (D.P.R. Dec. 2, 1988) (referencing a prior order striking a motion for summary judgment filed by a non-party). In *DRFP*, the non-party filed a notice of its interest in a civil action to recover interest earned on promissory notes the plaintiff sought to redeem from the defendant. The court granted a motion to strike the non-party notice because a filing merely "asserting an interest," without more, failed to show necessity or a valid reason for the filing. *DRFP* at *2. Similarly, here, the Coalition argues that it has an interest—not a legally protected interest—in opining on the Agreement, and experience in similar agreements, without more. Because the Coalition does not argue a necessity or proper purpose for its filing, its Notice is improper and should be denied.

**II.     The Coalition Cannot Meet the Standard for Intervention**

None of the Coalition members can meet the standard for intervention under Rule 24 because it is past the acceptable time for intervention, they do not have a legally protected interest, they do not have standing,[2] and because they cannot claim any interest beyond the interests of the United States.

---

[2] Though the Coalition submitted its Notice together, the Coalition is comprised of four different groups, each of which would have to establish that they: (1) meet the standard for intervention, *Cotter v. Massachusetts Ass'n of Minority L. Enf't Officers*, 219 F.3d 31, 36-37 (1st Cir. 2000) (separately analyzing whether multiple movant-intervenors could meet the standard for intervention); and (2) have independent standing as a predicate to any properly filed Motion to Intervene, *Town of Chester, N.Y. v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (a movant-intervenor must show standing if they seek relief different than the relief requested by the plaintiff). None have done so.

A non-party may move to intervene in pending litigation as a matter of right, Fed. R. Civ. P. 24(a), or by permission, Fed. R. Civ. P. 24(b). But any intervention—by right or permission—must be timely. Fed. R. Civ. P. 24(a) and (b). In determining whether a motion for intervention is timely, the First Circuit considers the totality of the circumstances, including: (1) the length of time the would-be intervenor knew or reasonably should have known of his interest before intervening; (2) prejudice to the existing parties based on the would-be intervenor's failure to intervene promptly; (3) prejudice to the would-be intervenors; and (4) any unusual circumstances that mitigate for or against intervention. *Culbreath v. Dukakis*, 630 F.2d 15, 20–24 (1st Cir. 1980). Each of these factors weigh against allowing the Coalition to intervene.

To start, the Coalition has been aware of the United States' investigation into children's behavioral health services in Maine since 2019. ECF No. 24 at 2 (stating that DRM's 2019 complaint "sparked the United States' investigation, finding of violations, and ultimately this lawsuit"). When the United States filed its complaint against the State of Maine on September 9, 2024, the Coalition did not move to intervene at that time or at any time while litigation was ongoing. The fact that the Coalition has been aware of this case since its inception, but has not asserted a separate interest, counsels against intervention. *See Garrity v. Gallen*, 697 F.2d 452, 456 (1st Cir. 1983) (non-parties were not entitled to intervene even though they only knew about the underlying lawsuit due to local news coverage; the court held the parties "should have known of their interest in the case" because several articles described how the litigation may impact the would-be intervenors).

Allowing the Coalition to intervene now would unduly prejudice the existing Parties. Intervention must be timely "to prevent last minute disruption of painstaking work by the parties and the court." *Culbreath*, 630 F.2d at 22. Intervention, therefore, may be particularly prejudicial

when it is sought after court approval of a final agreement or after entry of final judgment. *Garrity*, 697 F.2d at 455. Intervention at such a late stage is more likely to "delay implementation of [] relief and require further allocation of scarce judicial and public resources." *Id.* at 458. Delay of relief and undue expenditures of resources cut against intervention. *Id*.

The Agreement is the result of many months of successful and productive negotiation between the Parties and is now more than six months into the compliance phase. The Parties agree that the substantive requirements of the Agreement will prevent children with behavioral health needs from unnecessarily entering or remaining in segregated facilities and will help children transition back home from such facilities when appropriate and unopposed by the children and their families. The Parties have been working together productively since this Court retained jurisdiction to enforce the Agreement. *See* ECF No. 17 (Parties' Joint Motion to Dismiss and Retain Jurisdiction); ECF No. 20 (Court's Order Granting Motion to Dismiss and Retain Jurisdiction).

Based on their motion, the Coalition appears to take issue with how the United States may oversee Maine's compliance with the Agreement. But, the strategies the United States may employ to ensure Maine's compliance are unrelated to the legal issues in the underlying lawsuit. Allowing the Coalition to raise factual or legal arguments not raised by either Party would unnecessarily divert time and attention away from the Parties' compliance efforts.

Denying the Coalition's request to intervene would not prejudice its members. The Coalition states that its members have an interest in ensuring Maine children with behavioral health disabilities receive intensive home and community-based services. ECF No. 24 at 1–3. Both the United States and Maine share this interest. *See, e.g.*, Settlement Agreement, ECF No. 20-1, Section I.E. ("The Parties are committed to full compliance with the ADA. This Agreement is intended to memorialize the commitment of the State to furnish its behavioral health services,

programs, and activities to children with a disability in the most integrated setting appropriate to meet their needs"). And the United States and Maine are more than capable of adequately representing this shared interest.

The Agreement states that the United States may "review compliance with th[e] Agreement at any time" and grants the United States "full access to the people, places, and documents that are necessary to assess the State's compliance with and implementation of th[e] Agreement." Settlement Agreement, ECF No. 20-1, Section XIV.L. The Agreement also requires Maine to provide the United States with regular written reports and relevant information on the status of its compliance efforts. The United States has actively monitored the State's compliance since the Court approved the Agreement on December 20, 2024, including an in-person monitoring trip to varied geographic regions across the State. The United States will continue to actively monitor Maine's compliance throughout the Agreement's term.

The Coalition's primary concern appears to be the mechanisms that the United States uses to enforce the Settlement Agreement, which is not an adequate basis for intervention. The Coalition claims to have an interest in "faithful implementation of the Settlement Agreement as written," ECF No. 24 at 2, and seeks to participate in this matter to "be heard regarding any proposed modification of the Agreement . . . including the elimination of critical components of that Agreement related to the Independent Reviewer." *Id.* at 1. The Coalition argues that eliminating the Independent Reviewer could make it harder for the Parties to implement the Agreement. This argument amounts to a possible future tactical disagreement between the Coalition and the United States about how best to monitor compliance; it does not reflect dissimilar interests or a disagreement over substantive requirements of the Agreement. The Coalition's speculative concern also does not amount to a legally protected interest on which to base a motion for

6

intervention. *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 204 (1st Cir. 1998) (to intervene as of right, a party must show a legally protected interest, namely, a demonstrated interest relating to the property or transaction at issue; a satisfactory showing that the disposition of the action threatens that interest; and a satisfactory showing that existing parties inadequately represent that interest); *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 564 (1st Cir. 2021) (upholding lower court's denial of permissive intervention because movant-intervenors did not overcome the presumption that the government would adequately protect its own action and thus their interests) (*citing T-Mobile Ne. LLC v. Town of Barnstable*, 969 F.3d 33, 38 (1st Cir. 2020); *Massachusetts Food Ass'n. v. Massachusetts Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 568 (1st Cir. 1999).

Even if there is a disagreement, a mere tactical disagreement, without more, does not demonstrate a legally protected interest sufficient for intervention. *Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13, 20 (1st Cir. 2001) (intervention denied where the proposed intervenor's interests were "closely aligned" with an existing party's interests, and the proposed intervenor sought only to introduce an argument that the existing party had not made); *see also Maine v. Norton*, 203 F.R.D. 22, 29 (D. Me. 2001), *aff'd sub nom. Maine v. Dir., U.S. Fish & Wildlife Serv.*, 262 F.3d 13 (1st Cir. 2001) (proposed intervenor's potentially different tactical approach to addressing an issue was not an adequate basis for intervention). And even if each of the Coalition members had legally protected interests, the First Circuit generally presumes that the United States will adequately defend its actions, especially where "its interests appear to be aligned with those of the proposed intervenor." *Maine v. U.S. Fish & Wildlife Serv.*, 262 F.3d at 19; *see also Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 111 (1st Cir. 1999)

("adequate representation is presumed where the goals of the applicants [for intervention] are the same as those of the plaintiff or defendant").

The United States can and will zealously defend the public interest in this case. And the United States is in the best position to determine the most appropriate strategies for monitoring Maine's compliance with the Agreement. The Agreement already provides a forum for the Coalition to share its thoughts on monitoring compliance. Failing to join this inactive litigation will not prejudice the Coalition.

There are no mitigating factors that weigh in favor of intervention. The Coalition argues that they should be allowed to participate due to Coalition members' "decades of experience enforcing federal disability law," "extensive knowledge of behavioral health system design," and "experience overseeing the implementation of large-scale systemic reform initiatives." ECF No. 24 at 1–2. But this is not enough for intervention and the United States has this same experience. Even if the Parties were to remove the role of the Independent Reviewer, and then this Court agreed to the modification, the United States could capably oversee Maine's compliance. And the fact that the Agreement already creates a forum for the Coalition to share its members' relevant expertise also weighs against their additional participation in this litigation, as explained below at III.

## III. The Coalition Is Not Otherwise Entitled to Participate

In recognition of the stakeholders' experience with advocating for Maine children with behavioral health needs, the Agreement provides a specific role for Disability Rights Maine and general roles for any stakeholders. But the Coalition attempts to circumvent Rule 24's standard for intervention by requesting leave to move in the future for "amicus curiae plus" status. [3] The

---

[3] Because the Coalition's Notice does not explicitly ask for leave to file an amicus brief, the United States will decide whether or how to respond to such a request if it comes.

8

Coalition cannot show why participation beyond their existing role laid out in the Agreement is necessary.

The Agreement requires Maine to meet quarterly with Disability Rights Maine. Settlement Agreement, ECF No. 20-1, Section IX.F. The express goal of those meetings is for Maine to seek Disability Rights Maine's insight into the needs of Maine children and families and receive feedback on the State's progress towards strengthening its community-based behavioral health service system. *Id*. The United States is open to meeting with stakeholders, including all members of the Coalition, to hear their thoughts and concerns about Maine's compliance efforts. But, allowing the Coalition to join this closed case, months after the Court entered the Agreement is an unnecessary expansion of the involvement of third parties who already have a specific role under the Agreement.

"Amicus plus," as mentioned in the last line of the Coalition's filing without support or argument, is an informal term sometimes used for a non-party to a litigation whom the court grants additional privileges beyond the usual role of amicus curiae.[4] But "'an *amicus* who argues facts should rarely be welcomed,'" and courts should ensure that they do not allow parties to participate fully under the guise of amicus status. *All. of Auto. Mfrs. v. Gwadowsky*, 297 F. Supp. 2d 305, 307 (D. Me. 2003) (quoting *Strasser v. Doorley*, 432 F.2d 567, 569 (1st Cir. 1970)). Similarly, courts may rightfully be cautious about allowing amici to participate, in part because of the risk that amici will "creat[e] side issues not generated directly by the parties." *Portland Pipe Line Corp. v. City of S. Portland*, No. 2:15-CV-00054, 2017 WL 79948, at *5 (D. Me. Jan. 9, 2017). These arguments

---

[4] Although the Federal Rules of Appellate Procedure govern participation of amici curae on appeal, the Federal Rules of Civil Procedure do not provide for such a role of amicus at the trial court level, let alone "amicus plus" role.

against participation are especially relevant where—as here—the non-parties have no specialized experience or expertise beyond the experience and expertise of the existing Parties.

The Coalition seeks to participate to "be heard regarding any proposed modification of the Agreement." ECF No. 24 at 1. No such right exists. The Agreement expressly does not confer any benefits to third parties. Settlement Agreement, ECF No. 20-1 Section XIV.I ("No person or entity is intended to be a third-party beneficiary of the provisions of this Agreement for purposes of any civil, criminal, or administrative action, and accordingly no person or entity may assert any claim or right as a beneficiary under this Agreement in any civil, criminal, or administrative action."). Similarly, the Agreement can only be modified by written consent of both Parties and with approval from this Court. Settlement Agreement, ECF No. 20-1, Section XIV.G. Allowing non-parties to participate in the modification process is unnecessary and would be contrary to key goals of the Agreement: resolving this matter without litigation and bringing swift relief to the children of Maine and their families.

## IV. Conclusion

For the above reasons, the United States respectfully requests that this Court deny the Coalition's request to participate.

Dated: August 18, 2025  Respectfully submitted,

HARMEET K. DHILLON
Assistant Attorney General

JONAS GEISSLER
Deputy Assistant Attorney General
Civil Rights Division

/s/ *Margaret Girard*
KEVIN KIJEWSKI
Deputy Chief
MARGARET GIRARD
VICTORIA THOMAS
Trial Attorneys
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
950 Pennsylvania Ave, N.W.
Washington, D.C. 20530
Telephone: (202) 598-5668
margaret.girard@usdoj.gov

*Counsel for Plaintiff United States of America*

**CERTIFICATE OF SERVICE**

I hereby certify that on August 18, 2025, I electronically filed this document and any attachments with the Clerk of the Court using the CM/ECF system; that the same will be sent electronically to registered participants as identified in the CM/ECF electronic filing system for this matter.

Dated: August 18, 2025

/s/ *Victoria Thomas*
VICTORIA THOMAS
Trial Attorney
Disability Rights Section
Civil Rights Division
U.S. Department of Justice
150 M Street N.E.
Washington, D.C. 20002
Telephone: (202) 353-5137
victoria.thomas@usdoj.gov